Case number 23-5298, USA v. Jeffrey Campbell and 23-5311, USA v. Mark Dyer. Oral argument, 10 minutes for each defendant, 20 minutes for the plaintiff. Ms. Salinas for Mr. Dyer. Good morning. May it please the court. I'm Melissa Salinas and I'm the supervising attorney in this case. I would like to thank you for allowing our student attorney to argue and I will now introduce Achil Fernando-Perez. Thank you. Thank you. Good morning. Good morning, Your Honors, and may it please the court. Achil Fernando-Perez on behalf of Mr. Mark Dyer. I'd like to reserve two minutes for rebuttal. All right. Today, I will be presenting arguments on the improper jury instruction. The district court's jury instruction in Mr. Dyer's case contravened the Supreme Court's ruling in Ruan v. United States, which was decided while Mr. Dyer's case was on direct appeal. At the core of the Supreme Court's decision in Ruan is a simple directive. When an individual is authorized to issue prescriptions for controlled substances, the government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner. Simply put, the mens rea of knowing attaches to the authorization element. The 846 conspiracy to distribute instruction failed to properly instruct the jury on the requisite mens rea and therefore did not comply with Ruan. As the instruction read, a physician or nurse practitioner must not distribute and dispense the controlled substances without a legitimate medical purpose or outside the usual course of medical practice. The court framed the authorization element as a disjunctive or statement with no mens rea requirement. The or phrasing made it so that the jury could find that the medical professional's actions to be unauthorized if they were simply outside the usual course of medical practice. And so while the acting without a legitimate medical purpose has some subjective element to it, it talks about the medical professional's intent, the outside of the usual medical practice is a completely objective standard and a standard that Ruan says is not right. But counselor, since this is a conspiracy case, the elements of conspiracy do not include that requirement, do they? Isn't it enough if the parties who to the agreement understood that the activity that they were engaged in was simply unlawful? You know, the problem was that the jury didn't understand properly what was unlawful. They didn't understand that to be unlawful, it had to be unauthorized and it had to be knowingly unauthorized. Well, isn't it true for a conspiracy offense though that the government doesn't even have to prove the underlying offense? So in that instance, if you don't even have to prove the underlying offense, the elements of the underlying offense don't get subsumed within the conspiracy instruction, do they? You know, so I would say to convict on the conspiracy element, the jury needed to find that Mr. Dyer knowingly issued unauthorized prescription because that's part of the predicate offense and that's the definition of the object offense. Wait, that he agreed to do that, not that he did it. That he agreed to unlawfully act in an unauthorized fashion, correct. Yes, that's exactly right. I'm sorry I misspoke. But they didn't have any instruction on that. Mr. Dyer was simply working at Dr. Campbell's medical practice and by just finding that, the jury could find that authorization was satisfied. This is exactly what Ruan warned against. Counsel, don't you have, I think you have to situate yourself in the context of the cases that have applied Ruan and they have allowed for various instructions. I mean, to me at least, it seems your best argument is the argument that has to do with the diversion part of the instruction, which is the part that is not in these other cases. Your Honor hits the nail on the head. It's exactly about this disjunctive or framing of the authorization element. I'll go to Bauer and Anderson because I think that's what your Honor is getting at. Bauer and Anderson do not apply here because the language of the authorization element there was materially different. Those cases used an and in the authorization element. The jury had to find that it was without legitimate medical purpose and outside the usual course in medical practice. That's a subjective element and an objective element. And so Ruan says in the court's interpretation of Ruan, in Bauer and Anderson, tell us that's okay. The deliberate ignorance instruction fixes that. But that's not the case here. Here, the jury could have convicted Mr. Dyer just because his actions were outside the usual course of medical practice. That's a completely objective analysis that the jury could have convicted him on. And so in... What about the likelihood or how do you factor in the possibility of harmless error if the illegality is evident from the evidence, both direct and circumstantial, and it's clear that there's illegality and it was participated in or agreed to by your client. What's the... Ken, is the exact wording of this instruction all that germane to assessing... to the jury assessing guilt? How do you address harmless error? So I'll say two things on that point, Your Honor. First is that this was an extremely close case. Mr. Dyer was acquitted of all the unlawful distribution counts and only convicted of the conspiracy and four other money laundering and healthcare fraud counts. And so it's extremely... It was an extremely close case and that goes to harmless error directly. But I think... And you say it's a close case for what reason again? Because he was acquitted on some conduct. But I will also say that there was a difference in the instruction to the substantive count and in the conspiracy count. And that is germane in how the jury might have decided this case. In the substantive count, they had to find both that it was without illegitimate medical purpose and outside the usual course of medical practice. And so they acquitted him of that conduct because those two things were both necessary, we presume. On the conspiracy count, one or the other was enough for conviction. So it could have been without illegitimate medical purpose or outside the usual course of medical practice. And so if the jury relied solely on that objective part of the instruction, that directly contravenes Ruan. I'd like to just point the court's... I guess I'm a little confused. You're saying that the court in the deliberate ignorance instruction said, dispensed or distributed outside the course of professional practice or not for a legitimate medical purpose? You're saying the court said or? Yes, Your Honor. It's in the definition of the crime for count one of the conspiracy. I'm sorry, the definition of what? The crime for count one of the conspiracy. Not in the deliberate ignorance instruction, but in the definition of the conspiracy. So I can read that language again to you. The court said, and I quote, a physician or nurse practitioner must not distribute and dispense the control substances without a legitimate medical purpose or outside the usual course of medical practice. Okay, but later instructions used and, right? For the unlawful distribution count, correct. But for this count, it was framed in the disjunctive, the or statement. Okay, and then the language that is the deliberate instruction that if you're convinced defendant ignored a high probability the control substance were dispensed or distributed outside the course of professional practice and not for legitimate medical purpose or that patients were diverting these controlled substance for illegal purposes. What was that instruction? Your Honor, so the purpose of a deliberate ignorance instruction is to give the jury a tool for finding knowledge, right? And so the instruction tells the jury that it can infer knowledge if it finds the medical professional deliberately ignored obvious facts. What it does not tell the jury is that to return... Counsel, you're not listening to the question, I don't think. There's a part of this instruction and maybe this was for the substantive count and not for the conspiracy count also. But that there's a part of this instruction that tells the jury that if they find that the defendant deliberately or ignored a high probability that the drugs were being diverted, then he can be found guilty. Yeah, Your Honor, I'm sorry, but the point I'm trying to make is that the deliberate ignorance instruction did not tie to the authorization element because there was no knowledge requirement in the authorization element. So a deliberate ignorance instruction only modifies how the jury can find knowledge. It tells the jury that if this defendant ignored obvious facts, then you can still convict. But the jury had no link. The jury didn't know that the deliberate ignorance instruction applied to the authorization element because there was no knowledge requirement in the authorization element. And so without that link, we can't expect the jury to kind of pull this link out of thin air. And with that, I see that my time is up, so I'll continue just on rebuttal. All right, you'll have your rebuttal time. Thank you. Good morning, may it please the Court. Ronald Chapman on behalf of Dr. Campbell. I've reserved five minutes for my rebuttal argument.  I'd like to move the ball a little bit forward here and talk about the deliberate ignorance instruction specifically, and specifically about Global Tech, the Supreme Court case that is directly on point. In this case, when we read the deliberate ignorance instruction, we see that it did exactly what Global Tech tells us not to do. In Global Tech, the Supreme Court analyzed the Federal Circuit's instruction related to deliberate ignorance as applied in a patent case. This was not a criminal case. It was a patent case, but it's the Supreme Court's only voice on this issue. In that case, they said that it was incorrect and inappropriate to apply the deliberate ignorance instruction to prohibit somebody from burying their head in the sand for a known risk. The phrase known risk is really important in this case, because what the Supreme Court says is instead of avoiding a known risk, you must avoid a subjective belief of a high probability of a fact. We have known risk, and we have fact. When we look at this case, we have to assess whether or not there was a known risk that they were avoiding, or there was a known fact. In this case, when we read the instruction, it specifically indicates that the jury can find guilt if you ignore the potential that there was diversion. Is there anything from Global Tech that would make us, or that I think would indicate that the rationale that was applied there as to a substantive offense should apply in the conspiracy context? The deliberate ignorance instruction was applied to conspiracy in this case, and the conspiracy instruction and the elements of the offense do require a knowledge component. If the jury heard the deliberate ignorance instruction, that certainly – I want to make sure I'm understanding you. You're saying that there was a conspiracy. You said this case. You're not – are you saying Global Tech or the case that's before us right now? This case before us right now. So Global Tech was not a conspiracy case? No. They weren't dealing with conspiracy? It was only – Approving an agreement? Yes. Okay. It was only talking about the elements of deliberate ignorance, and it's specifically the court's voice on that issue. So here, the government tried to find Dr. Campbell guilty of ignoring a known risk, the potential for diversion. Now, we need to look and see whether or not the government ever proved actual diversion, and this is very important. There was not a single patient identified in the entire case that diverted their controlled substances. In fact, every patient mentioned in the case, The result of their charged count, their substantive count, was acquittal by the jury. There is not a single patient identified in the government's papers that diverted their medication or received a controlled substance that was determined to be outside the usual course of professional practice. The government had to show a fact, and the judge had to articulate the known fact that was ignored. And in this case, that step was skipped. Instead, we've watered down the mens rea requirement for this sort of offense in order to find physicians guilty of conspiracy where there's not a single identified prescription in the record. Well, that argument is that the judge has to identify the behavior or the acts of illegality, and if he doesn't do that, then there's some defect in the procedure followed by the court. I just don't think that's right. There's a broad spectrum of evidence in a case like this, and that's particularly so in conspiracy cases, and that legal standard you're talking about doesn't even seem applicable to me. It does, and it's specifically applied by the Supreme Court, Your Honor. The Supreme Court in Global Tech has specifically said Well, what about a drug conspiracy case or a case of misapplication of professional behavior, such as the case we have before us? Do you have a case factually similar to this that you can bring to our attention instead of the case you're talking about there? Well, we're not citing Global Tech for factual similarity. That's a patent case, but the Supreme Court says So I guess your answer is no, you don't have any such case. We do, Your Honor, but I'd like to answer the first question. Well, the question before you is what cases can you bring to our attention that would be more specifically applicable here? That would be more specifically applicable to the facts? There is not a single case identified in the record where physicians were acquitted of all substantive counts by a jury but found guilty of a conspiracy. There are no facts cited in the record or no cases cited in the record that show a physician who was found guilty of conspiracy, despite the government's inability to list a single controlled substance prescription that was purportedly unlawfully issued. Okay. But that's – there were many patients. The substantive counts concerned, what, seven patients or fewer? I believe five, Your Honor. Five? At least with respect to Dr. Campbell. Okay. So it means that they didn't convince the jury as to those five patients. Yes, Your Honor. That doesn't mean that they didn't show the jury that there was some diversion with other patients or mis-prescriptions with other patients? I see that I'm out of time, but if I may respond. Well, first, if we look at the testimony of Dr. King, he didn't reference a single other patient but vaguely indicated that he reviewed 25 patients and he found problems with all 25. Dr. Denham, their second expert, reviewed, I believe, 25 and 12 of the patients. He found no issues whatsoever. Now, when we look at the record, we don't see those other patients discussed anywhere during trial. Specific prescriptions were not discussed. Specific indications of diversion were not discussed. Specific deliveries of controlled substances or problems with the actual patient care were not discussed by those experts and not presented to the jury whatsoever. I have a different question. Yes, Your Honor. Did you introduce any evidence or facts at the sentencing proceeding or in your briefing about what the expected payment was? For the health care fraud? Yes, for the issue. We, I believe, had the expert report of Mr. Sean Weiss, who was a coding and billing expert. We also submitted contracts that showed that there was a specific negotiated rate for the amount that was going to be received. And when did you submit those? Well, that would have been during the trial, Your Honor, but I believe we would have also referenced them in our objections to the pre-sentence report, which were lengthy, as well as in our sentencing memorandum. We likely would have cited to that information. You likely would have or you did? I don't have the specific answer with me, Your Honor, but I know that we articulated the banks' objection. The Third Circuit case had just come up indicating that actual loss was going to be more appropriate. I think I raised that towards the end of sentencing, and the judge did not follow banks in that case, Your Honor. Thank you. Thank you. You may proceed. Thank you. May it please the Court, Sophia Vickery for the United States. I'll start with the Ruan jury instruction issue, unless the Court has a different preference. These instructions correctly inform the jury about Ruan's subjective knowledge requirement in two different ways. First is the conspiracy instruction itself, which delineated specific intent. I'm losing the end of yours. Can you keep your voice up, please? Oh, I apologize. Sure. So the conspiracy instruction itself is the first way. There's two ways that this jury instruction told the jury about Ruan's subjective intent requirement. The first is the definition of the conspiracy instruction itself, which delineated specific intent. It told the jury that the defendants must have knowingly conspired to commit the crime of unauthorized distribution, that they must have known the conspiracy's main purpose, and then it defined that purpose as to distribute drugs without authorization. So by finding the defendants guilty of conspiracy, the jury necessarily found that they had agreed to advance the goal of distributing drugs without authorization. The second way that the instruction comported with Ruan was through the deliberate ignorance instruction. That told the jury that they needed to focus on the defendant's subjective knowledge, and then it juxtaposed that knowledge with mental states of lesser culpability, like carelessness, recklessness, and negligence. What do you do about the clause that says that they can be found guilty for deliberately ignoring that patients were diverting the controlled substances? Yes, so this was an issue raised for the first time in a reply brief. It wasn't discussed before the district court or in the principal brief. But Ruan was decided after the trial. Right, and it also wasn't raised, but the mens rea issue was not raised before the district court with respect to this instruction. Setting that aside. I know, but plain error is judged at the time the case is in front of us. Right, my point is that this also wasn't raised in the opening brief. It was only raised in a reply brief, this particular focus. Setting that aside, the sentence is that if you are convinced that the defendant deliberately ignored a high probability that patients were diverting, then you may find that he knew this was the case. So this is at record page 1681. So that can be read as, if you find that he ignored a high probability of diversion, you can find that he knew about diversion. Not that he was guilty or that the subjective knowledge requirement has been met. And that's confirmed by sort of other parts of the deliberate ignorance instruction itself, which do exactly what this court in Anderson says that you need to do. It talks about the defendant's knowledge, generally, that what is needed to be proven is subjective intent, that the defendant deliberately closed his eyes, again juxtaposing it with the lesser culpable mental states. So again, combined with, particularly combined with the conspiracy instruction, the jury was well informed about what specific intent was required. So if I'm understanding you correctly, what you're saying, and tell me if I'm not understanding you correctly, is that the deliberate ignorance instruction was a tool for the jury to use to make a determination regarding knowledge, not to make a determination regarding whether or not, the ultimate question of whether or not you were guilty of the conspiracy. That's right. And as part of that tool for knowledge, it mentions diversion as an aspect. But it does so in a way that, it doesn't say if you find he was diverting, then you find knowledge. It says if you find he was, if he was deliberately ignoring diversion, then you may find that he knew diversion, right? And then combined with sort of the other parts of the instruction, talking about knowledge. And then again, this was a tool for finding conspiracy, which itself has an entirely, you know, different instructions about specific intent. So those in combination made clear to the jury what it needed to prove. So then what are you relying on to say the jury was instructed that they, the defendants had to intend to dispense without authorization? The two instructions that I'm relying on are the conspiracy instruction, the definition of conspiracy, and the deliberate ignorance instruction in combination. But you just said that the deliberate ignorance instruction doesn't have to do with authorization. It just says that you can find that they ignored that there was diversion. I meant only with respect to that sentence. And then diversion, for example, is a red flag that was argued to the jury that can be relevant to proving the crime, that can be relevant to proving knowledge. Similar to the way counsel was just arguing that diversion, and this was also the argument before the district court about the factual basis for this instruction to begin with. Defense counsel had argued that it should not be given because the actual diversion is the only relevant red flag. And the district court denied that objection and gave this instruction, which is substantially similar to what was given in Anderson. So I also wanted to discuss the actual conspiracy instruction itself, which delineated specific intent in a few different ways. And counsel had mentioned the or component of that instruction, so I'm just going to go there quickly. So this, again, is an issue that was raised for the first time. It's one sentence in a reply brief, so I don't think it's fully developed before this court. And again, I think that the way that you can read this sentence is a little bit different from how counsel was presenting it. It is a not or sentence, so the sentence is, a physician or nurse practitioner must not, and then do the two things, so must not act without a legitimate medical purpose or outside the usual course of medical practice, meaning those are the two things he can't do. And so that is a unitary requirement, which is also consistent with how it was instructed throughout the rest of the jury instructions when it was framed as a positive sentence, so in the deliberate ignorance instruction and then in the substantive counts as well. I'm not following you. It says the physician cannot do this or that. Right. So those are both things that the physician can't do. So I bring that up only to rebut the idea that they are separate, independent requirements, because as it is phrased with the not, the jury would be instructed that they're actually both relevant requirements, that those are two things that the defendant cannot do, both of those things, which I think is consistent, again, with how it's phrased in other parts of the instruction when it uses the word and or when it's just phrased as a unitary requirement. And what about the... I understand that intended loss is a legitimate alternative, actual or intended, but what about the argument that even under intended, they never intended the face amount because everybody knows that there's a schedule for reimbursement, and so you're not intending the greater amount, you're intending the still improper lesser amount. So I think the district court just didn't make that finding on this record. The district court looked at the fee sheets and reasonably found that based on the defendant's familiarity with those billing codes, what they circled on the fee sheet was what they intended to get. So when the defendant circled, the code is 99214, which allows for this much higher reimbursement. When they circled that code, they intended for insurance to pay the amount for that code, not a lesser amount. And that's what was based on the evidence in the record in which witnesses explained why they were circling that code was to get the higher amount. That evidence was at trial. To be candid, this wasn't developed too much at sentencing, so there wasn't additional intent evidence offered at sentencing. Okay, so you're saying that we're talking about apples and oranges. We're not talking about an amount that was billed. We're talking about a code, and how was the code linked to an actual number? So the code, the evidence at trial, and I don't have the dollar figure in front of me, but the evidence at trial was that, for example, Medicare pays this code as, I believe it was something in the $100 range. So that when the defendant circled 99214 for running on a treadmill, they intended for Medicare to pay, and again, I don't have the number, but let's say $150. And so that code was tied to a specific amount, which is the standard billing amount for that code. Okay, I'm sorry. The standard billing amount or the standard paying amount? The standard reimbursement amount was what the trial evidence talked about. And again, it wasn't developed further at sentencing. I believe counsel for Dr. Campbell briefly mentioned he's familiar with insurance codes. He doesn't expect to get this. Counsel for Dyer joined that objection without offering additional evidence about Mr. Dyer's intent, and the district court denied the objection. Again, I think reasonably finding that when the defendants billed these amounts, they intended to receive that amount of money from insurance. If the court has no further questions, the government would ask that you affirm. Thank you. Do you have anything to say about the calculation, any drug calculation amounts in regard to the sentencing? Or do you want to rely on your brief for that? I'm happy to discuss that, Your Honor. The drug quantities, the district court just looked at 19 patient files on which the government presented three expert opinions. So there were the two experts from trial and then an additional sentencing expert. Again, those are just 19 files from the thousands of patients during a seven-year conspiracy. The district court took those 19 files. Over the government's objection, it removed the drug quantities for the patients who had been named in the indictment on which defendants had been acquitted. The district court also decided to only count the drugs prescribed by each individual defendant. So it didn't make each one responsible for all drugs in the conspiracy, but instead only the drugs that that defendant had written. The district court also estimated that approximately a third of the drugs may have been legitimate. Again, over the government's objection, it just took off a third of the weight. That was the amount that the district court used for the defendants, which is a very conservative estimate and I think fully supported by the record evidence. All right. Thank you. Thank you. We'll hear a rebuttal if there is any. Turn the light on, please. Your Honors, I'd like to just talk a little bit about a case from the Fourth Circuit, Smithers v. United States. And Smithers is on point with Mr. Dyer's situation. The authorization element was framed disjunctively with an or statement. The objective good faith instruction was included in the elements needed for conviction, which made the analysis about a reasonable person, something that Ruan prohibits. And third, because there was no knowledge requirement, the deliberate ignorance instruction didn't modify the knowledge requirement. So like in Mr. Dyer's case, in Smithers, the authorization element was framed disjunctively, showing the jury to convict solely based on simple malfeasance. As the court there said, this framing created a strict liability offense. I'm sorry. I'm not seeing Smithers in your brief. What's the citation for Smithers? Yes, it's 92 Federal Reporters Fourth Edition 237 from 2024. We cited it in our reply brief, Your Honor, because it came out after the opening briefs had been filed in this case. And so Smithers, applying de novo review, said that this instruction was wrong and overturned Mr. Smithers' conviction. And it was the exact same instruction? It was the exact same instruction, Your Honor. And it was the substantive offense, not a conspiracy charge? It was the substantive offense, yes, exactly. And Smithers is following the lead of Kahn from the Tenth Circuit. That was Ruan's companion case that was overturned by the Supreme Court and sent to the Tenth Circuit for decision. There, again, the instruction was framed disjunctively, and the court overturned the substantive count and all the underlying, all the other counts. So they overturned the conspiracy, the money laundering counts, and the health care fraud counts. And they said that the initial count was inextricably intertwined to the rest of the counts. Now, just to wrap things up here, I just want to say that the court here does not have to touch Bauer or Anderson or Stanton. We're asking the court for a very narrow ruling in favor of Mr. Dyer. I want to wind up your red lice on there. Yeah, so when there are obvious misstatements of laws, like the ones in Mr. Dyer's case, the Anderson-Bauer deliberate ignorance fix does not work. For those reasons, we would ask the court to vacate Mr. Dyer's convictions and remand for a new trial. Thank you. Thank you. Your Honor, the court asked for specific cases, and I was able to prepare some. First, Giesen says that we should use deliberate ignorance sparingly. Mary says that we should not use it indiscriminately. If we apply it to say that a deliberate ignorance of the potential for diversion is an appropriate instruction, that would apply to all Controlled Substance Act cases against physicians, and it would be an indiscriminate and flagrant use of deliberate ignorance, especially if we didn't require the court to identify a particular fact as opposed to a known risk, which was shot down in the federal circuit. Factually on point, though, Randolph, there was no conspiracy where there was no evidence of unlawful distribution of the drugs listed in the indictment. Instead, what the government wants you to do is look outside of the charge counts of the indictment and infer unlawful distribution, but they don't show a specific drug delivery, a specific patient, nowhere in their briefs. They don't identify a date of that occurring. They don't identify a start and end date of any purported conspiracy. And, in fact, the only person to even vaguely reference the concept of a conspiracy was Dawn Antle, a nurse practitioner who was at trial, pled guilty mid-trial, and took the witness stand. And when she testified, she said, well, there was just an air of high prescribing. High prescribing is not a conspiracy to unlawfully distribute controlled substances. I'd like to go to the billing and identify further evidence that deals with the loss amount here. The court found a 3.9 intended loss amount. It's very important to look at that loss amount and the evidence supporting it. They used all of the billing that they could identify. The reality was the government used Dr. Campbell's internal billing documents to support the loss amount and used the full intended amount, the full amount that was billed. In reality, if we were to do an analysis of the evidence that was submitted to support the loss amount and look for what was specifically paid, it would be a much, much lower number. So to answer Judge White's question, we have submitted the specific evidence of the paid amount. The government actually produced it. And we also submitted the contracts which show everybody knows a negotiated rate applies to this. Okay, but if they went by the code, there's an amount that corresponds to the code, right? Correct, yes. And your colleague says that's what the judge did. A specifically negotiated amount that applies to the evaluation and management code 99213 or 4, everybody knows that that is going to be a specific amount. The judge didn't apply that. The judge applied the entire billed amount. The billed amount is higher than the amount that is ultimately received pursuant to that contracted negotiated rate. Okay, so you're saying there was not testimony that said this code corresponds to this payment? Not for specific payments, Judge. That's correct. Not what? Not for specific payments, yes. But there's varying amounts that are paid throughout this practice's history by different insurance companies. So it's a very difficult question to answer. But Dr. Campbell knew what he would receive from certain companies every time a certain code was billed. You know, but the problem is Dr. Campbell didn't submit evidence to dispute those billed amounts. He purportedly knew he would receive less, but he didn't really offer any evidence sufficient to address that. He did, Your Honor. Evidence of the actual amounts that were paid were submitted. And consistently. You mean in the documents? To the trial court. But there was no testimony in support of the billed documents on his behalf, as I understand it. Is that incorrect? Evidence of exactly what was paid to Dr. Campbell was submitted and thoroughly discussed. Where? At sentencing. Sentencing. And during trial. Spreadsheets of the amounts that were paid back to Dr. Campbell. Well, his argument is that it was in the documents, but there was an absence of testimony on behalf of Dr. Campbell on that trial. Is that correct or not correct? There was testimony by Sean Weiss that specific negotiated rates are paid back to physicians every time they bill, and every provider is aware of that. No, but she didn't address the entries on the documents. I mean, maybe a broad statement, and it's not even clear that the foundation was laid that she had proper knowledge. When you say she had proper knowledge, Judge, I'm sorry, I don't know who you're referring to. I can't remember the witness's name that you just referenced. I believe that the specific paid amounts were put in. I see I'm out of time. I would like to discuss drug quantity very briefly, if I may. Well, you're jumping to something, but if that completes your answer on what we were talking about, that's fine. It does, Your Honor. All right. All right. Thank you. Well, you can't go into that. You're out of time. Understood. Thank you. Thank you. Well, the case is submitted, and we thank you for your arguments. And when the table is clear, you can call the next case. The new attorneys, the student attorneys, or the student attorney, performed in an exemplary way. I'd like to compliment the University of Michigan program for all of the good work that's being done there. Thank you for that, and we'll get an opinion to you as soon as we can.